UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRESTIGE INSTITUTE FOR PLASTIC SURGERY, P.C., on behalf of PATIENT SA<br><br>Plaintiff,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, and EMPIRE BLUE CROSS BLUE SHIELD, and MACQUARIE HOLDINGS U.S.A., INC., PPO PLAN,<br><br>Defendants. | Case No. |

# **COMPLAINT**

By way of this Complaint, Plaintiff Prestige Institute for Plastic Surgery, P.C. ("Prestige" or Plaintiff), on behalf of Patient SA, brings this action against Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), Empire Blue Cross Blue Shield ("Empire"), and Macquarie Holdings U.S.A., Inc. PPO Plan (the "Plan" or the "Plan Defendant") (together, "Defendants").

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendants' under-reimbursement to Plaintiff for post-mastectomy breast reconstruction surgical services.

2. Empire was the claims administrator for the Plan, in which the Patient, SA, was the Plan participant.

3. Under the Blue Card Program, which applied in this case, Defendant Empire was the Home Plan and Defendant Horizon was the Host Plan.

1

4. Both Defendants made adverse benefit determinations on appeal in this case, under-reimbursing Plaintiff, imposing out-of-network patient responsibility liability on the Patient, and breaching the unambiguous terms of the Plan.

5. Patient SA was initially diagnosed with breast cancer. The patient had previously undergone a bilateral mastectomy and reconstructive breast surgery with another surgeon at another hospital. However, the patient developed surgical complications, including repeated wounds. Because her prior surgeon did not have the training or expertise to perform the necessary breast flap surgery, she was referred to Joseph F. Tamburrino, M.D., who is double-Board-certified in plastic surgery and received fellowship training in Reconstructive Microsurgery at UCLA.

6. On December 27, 2016, Dr. Tamburrino performed a specialized breast reconstruction surgery called the DIEP (deep inferior epigastric perforator breast reconstruction) procedure.

7. Dr. Tamburrino did not participate in Empire's network of contracted health care providers.

8. After this breast reconstruction surgery, Plaintiff submitted an invoice in the form of a CMS-1500 form as required for a total amount of $139,613.34. Defendants reimbursed Plaintiff only $4,095.81, leaving an unreimbursed amount of $135,517.53, or 97% of the total amount.

## JURISDICTION

9 The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

10. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the

State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over them.

11. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Horizon has an agent, and transacts business in the District of New Jersey,(b) Empire has an agent and transacts business in the District of New Jersey, and (c) Macquarie Holdings U.S.A., Inc., PPO Plan transacts business in the District of New Jersey by insuring individuals in the State (including the Patient) who are plan participants and beneficiaries of its Plan.

12. Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where she resides or alleges that the violation of ERISA occurred. Plaintiff alleges that Defendant violated ERISA within the District of New Jersey.

## **PARTIES**

13. Plaintiff Prestige Institute for Plastic Surgery, P.C., is a physician practice group led by Joseph F. Tamburrino, M.D. Dr. Tamburrino is double-Board-certified in plastic surgery by the American Board of Plastic Surgery and the American Board of Surgery. He received his medical degree from Thomas Jefferson Medical College and completed his residency training in general surgery at Temple University Hospital. He completed his plastic surgery residency at the Cleveland Clinic. He received fellowship training in Reconstructive Microsurgery at UCLA. Plaintiff's office is located in Vorhees, New Jersey.

14. Defendant Horizon Blue Cross Blue Shield of New Jersey is a health care insurance company with offices located in New Jersey and offers Blue Cross Blue Shield-branded health care insurance in the State of New Jersey. Its principal office is in Newark, New Jersey.

15. Defendant Empire Blue Cross Blue Shield is a health care insurance company with offices located in New York City and offers Blue Cross Blue Shield-branded health care insurance in the State of New York. It is the insurer for the Plan.

16. Plan Defendant Macquarie Holdings U.S.A., Inc., PPO Plan is a self-funded ERISA plan. Its principal place of business is New York, NY.

## FACTUAL ALLEGATIONS

### A. The Blue Card Program

17. The Blue Card Program, in which each Blue Cross Blue Shield ("BCBS") licensee must participate, including Horizon and Empire, was the direct result of the practice of all the BCBS licensees, under the direction of the Blue Cross Blue Shield Association ("BCBSA"), to engage in exclusive geographical market allocation. Under this practice, each BCBS licensee was allocated a specific geographic market to market health insurance. This practice continues today.

18. Horizon's allocated exclusive market is the State of New Jersey. Accordingly, it cannot offer health insurance in the State of New York, which is allocated to Empire. It cannot contract or negotiate with providers outside of its allocated exclusive market other than certain contiguous counties.

19. Empire's allocated exclusive market is certain counties in the State of New York, and certain contiguous counties. It cannot offer health insurance outside its allocated exclusive market, including in the State of New Jersey. It cannot contract or negotiate with providers outside of its allocated exclusive market other than certain contiguous counties.

20. These restrictions insulate Horizon and Empire against competition from each other in their respective exclusive geographic market areas.

21. To make this mandatory agreement work, which is part of their licensing agreement with the Blue Cross Blue Shield Association, the BCBSA created Home and Host Plans.

22. The Blue Cross Blue Shield insurer in the exclusive geographical area through which the member is enrolled is the Home Plan. In this case, it is Empire. The Blue Cross Blue Shield insurer located in the exclusive geographical area where the service is provided is referred to as the Host Plan. In this case, it is Horizon.

23. When a provider network is involved, Empire would rely on Horizon's network under the Blue Card Program, since Horizon is the Host Plan where the provider's services are provided. In this case, Dr. Tamburrino was out-of-network with Horizon. Empire was prohibited from contracting with Dr. Tamburrino directly.

24. Under the Blue Card Program, Plaintiff was required to and did bill Horizon, not Empire, since the surgical services were rendered in New Jersey.  Under the Blue Card program, and in this case, Horizon was the agent of Empire.

### B. December 27, 2016, Breast Reconstruction

25.  After performing the breast reconstruction surgery, for which Plaintiff received authorization, Plaintiff submitted an invoice on a CMS-1500 form to Horizon, as required, for $145,312.02.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| S2068-RT | $50,000.00 | $1,273.30 |
| S2068-LT | $50,000.00 | $1,890.00 |
| 19370-RT | $9,842.04 | $352.80 |
| 19370-LT | $9,842.04 | $352.80 |
| 35761-RT | $5,698.68 | $226.91 |
| 35761-62 | $5,698.68 | $226.91 |
| 19328-RT | $7,115.29 | $0.00 |
| 19328-LT | $7,115.29 | $0.00 |

**Total**          $139,613.34                $4,095.81

26.     CPT code S2068 is breast reconstruction with deep inferior epigastric perforator (DIEP) flap. CPT codes 19328 and 19370 are breast reconstruction procedures.

27.     Plaintiff filed a grievance as required under the Plan concerning the amount of Defendants' reimbursement of Plaintiff's bill on September 25, 2017.

28.     Defendant Empire responded in a letter dated March 30, 2018. It stated that the "maximum allowed amount for out of network services for your PPO medical plan is based on the 70th Percentile Fair Health rates using the zip code associated with the provider of service. . . . We have reviewed the claim with the 70th Percentile rates we found on the Fair Health website and found the claim to be underpaid. . . . The claim will be adjusted and you will receive additional payment and a new Explanation of Benefits."

29.     Plaintiff did not receive additional payment.

30.     Under the terms of the Plan, Plaintiff's claim is not reimbursed based on the 70th percentile of Fair Health.

31.     Defendant Empire's March 30, 2018, letter represented that it based its reimbursement on the out-of-network methodology of the Plan, called the "Maximum Allowed Amount."

32.     However, the "Maximum Allowed Amount" applies only when a provider is both out-of-network *and* in Empire's allocated exclusive market. Empire's allocated exclusive market is certain counties in downstate New York. Plaintiff provided the surgical services to the Patient in New Jersey, Defendant Horizon's allocated exclusive market.

33.     This meant that under the BCBSA licensing agreement, Plaintiff was an out-of-area provider, and that the BCBS Inter-Plan Services, in this case, the Blue Card Program, applied.

34. Under the terms of the Plan, reimbursement of out-of-network out-of-area providers was different than reimbursement of out-of-network providers in Empire's allocated exclusive market. The Plan provides this reimbursement rate:

> Whenever you access covered charges for your healthcare services outside Empire's service area and the claim is processed through the BlueCard Program, the amount you pay for covered healthcare services is calculated based on the lower of:
>
> • The billed covered charges for your covered services; or
>
> • The negotiated price that the Host Blue makes available to Empire.

35. Defendant Horizon, the Host Blue plan, did not negotiate with Plaintiff. Therefore, Defendants should have reimbursed Plaintiff the billed charges under the terms of the Plan.

36. This conclusion is confirmed by the Administrative Services Agreement between Empire and the Plan. It states: "Empire may pay Claims from non-Network Providers outside of Empire's service area based on the Provider's Billed Charges, such as in situations where a Member did not have reasonable access to a Network Provider."

37. Patient SA, after undergoing prior failed breast reconstruction surgery from another surgeon, needed specialized DIEP surgery. This surgery could only be performed by fellowship-trained microsurgeons. One- and two-year fellowship training is post-residency and beyond Board certification. The surgery could not be performed by Patient SA's prior surgeon. Drs. Tamburrino and Blechman, who were specialized in DIEP surgery, were not in-network with Defendant Horizon. Patient SA did not have reasonable access to a network provider.

38. The Plan had one level of required grievance. Plaintiff exhausted its administrative remedies.

39. Nonetheless, Plaintiff requested Defendants to reconsider their determination. On July 5, 2018, Defendant Horizon responded: "The request to reconsider the claim has been reviewed carefully. According to the member's home plan, the claim has been paid correctly."

40. Plaintiff made a second request for reconsideration, to which Defendant Horizon responded on January 2, 2019, denying the request.

41. In-patient surgical services were covered under the Plan.

42. Post-mastectomy breast reconstruction procedures were covered under the Plan. It is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"). The language of the WHCRA must be incorporated into all SPDs and Certificates of Insurance, as it was in the case of the Plan.

43. The Plan states:

Specifically, in the case of a participant or beneficiary who receives benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, the law requires coverage for:

- Reconstruction of the breast on which the mastectomy has been performed.

- Surgery and reconstruction of the other breast to produce a symmetrical appearance.

- Prosthesis and treatment of physical complications at all stages of mastectomy, including lymphedemas.

The coverage described above shall be provided in a manner determined in consultation with the attending physician and the patient.

44. Plaintiff received an Assignment of Benefits from Patient SA in this case. The assignment stated, in pertinent part:

Unless revoked, this assignment is valid for all administrative and judicial reviews under . . . ERISA and applicable federal and state laws.

45. Plaintiff received a Designation of Authorized Representative from Patient SA. It stated, in relevant part:

> I hereby convey . . .to the Designated Authorized Representative [Prestige Institute for Plastic Surgery, P.C.] to the fullest extent permissible under the law and under any applicable employee group health plan(s) . . . any claim, cause of action or other right I may have to such group health plans . . . with respect to medical expenses incurred as a result of the medical services I received from the providers(s) and to the full extent per permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including but not limited to . . . any administrative and judicial actions. . . . by the Designated Authorized Representative to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, to bring suit by the Designated Authorized Representative against such liable party or employee health plan in my name with derivative standing but at such Designated Authorized Representative's expenses.

46.     ERISA allows an Authorized Representative to bring litigation on behalf of a Plan Participant or Beneficiary of an ERISA Plan.

### C.    Full Coverage of and Benefits for Breast Reconstruction Surgery under the Women's Health and Cancer Rights Act

47.     Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), enacted in 1998, which requires group health plans to cover and reimburse breast reconstruction after a mastectomy. This law, codified at 29 U.S.C. § 1185b, states:

> (a) **In general.** A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –
>
> > (1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .
>
> (c)    **Prohibitions.** A group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not –
>
> > (2)  penalize or otherwise reduce or limit the reimbursement of an attending provider,

> (d) **Rule of construction.** Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

48. The structure of this statute is straightforward. 29 U.S.C. § 1185b(a) requires that post-mastectomy breast reconstruction surgery be *covered*. 29 U.S.C. § 1185b(c) prohibits any restrictions or limitations on the *reimbursement rate* for this type of surgery, whether performed by an in-network surgeon or an out-of-network surgeon, as compared to other types of surgery where a plan or insurer may reimburse based on an out-of-network reimbursement methodology. However, 29 U.S.C. § 1185b(d), provides an exception to the strict requirement of 29 U.S.C. § 1185b(c): the plan or insurer may negotiate a lower reimbursement amount with the provider.

49. In this case, but for the language of the Plan requiring reimbursement at the billed amount, Defendants could have negotiated with Plaintiff to pay a lower amount. Instead, they unilaterally reimbursed Plaintiff based on its out-of-network methodology, in violation of the WHCRA. This statute was incorporated into the Plan, as required under 29 U.S.C. § 1185b(b). Defendants' failure to reimburse Plaintiff pursuant to the WHCRA was a violation of ERISA, 29 U.S.C. § 1132(a)(1)(b).

50. The WHCRA was enacted in October 21, 1998, not only because of horror stories of "drive-through mastectomies" where women were forced into four-hour out-patient mastectomy surgeries by their insurance companies to save money, but because of denials of coverage for breast reconstructions on the basis that such reconstructions were cosmetic. As Senator Snowe stated in committee:

> We have also found that breast reconstructive surgery is considered cosmetic surgery. Well, it is not. Forty-three percent of women who want to undergo breast reconstructive surgery cannot because it is deemed cosmetic. And that is wrong. Breast reconstructive surgery is designed to restore a woman's wholeness.

144 Cong. Rec. § 4644 at *4648 (May 12, 1998).

51. Accordingly, breast reconstruction was a covered and reimbursed service under Patient SA's Plan.

52. Defendants' decision to assess the patient $135,517.53, or 97% of the billed amount (plus co-insurance), in out-of-pocket costs for breast reconstruction surgery that must be covered was not a coverage decision. It was, instead, a decision that forced Patient SA to self-insure her own breast reconstruction surgery, in violation of the WHCRA. This was the kind of medical reimbursement determination that frequently triggers medical bankruptcies.

### D. Breast Reconstruction under New Jersey Law

53. It is also in violation of New Jersey law. On May 3, 2013, the Commissioner of New Jersey's Department of Banking and Insurance ("DOBI") issued Bulletin 13-10 based on New Jersey statutes, noting that "It has come to the Department's attention that there have been recurring instances of the inability of patients to obtain in-network benefits for the services of non-network surgeons performing breast reconstruction as part of the surgical procedure in which a mastectomy is performed. In some cases, carriers have been declining patient requests to use out-of-network surgeons, asserting the availability of in-network surgeons. However, the in-network surgeons frequently do not perform, or are not qualified to perform, the particular type of requested reconstructive surgery."

54. In this case, Defendants did not decline Patient SA's request to have Dr. Tamburrino perform her breast reconstruction surgery. Rather, knowing that there was no in-network provider who could perform this surgery, Defendants paid Plaintiff the out-of-network rate, which forced Patient SA to self-insure her own breast reconstruction surgery.

55. The DOBI Commissioner concluded that when an insurer in New Jersey did not have a breast reconstruction surgeon in its network, it should approve the use of an out-of-network

11

specialist but ensure that its member receives this service at the in-network co-pay amount. This requirement ensures that a cancer patient under New Jersey law and with coverage under the WHCRA, as here, does not face ruinous balance bills simply by choosing an out-of-network specialist.

56. To ensure the member pays only the in-network patient responsibility, the insurer negotiates an "in-network exception" agreement or negotiates a mutually agreed-upon rate prior to surgery or post-surgery. Defendants failed to do so in this case.

57. Defendants should have ensured that Patient SA received her breast reconstruction surgery at the in-network level of patient responsibility. The patient needed DIEP surgery which, because it was so specialized, only Dr. Tamburrino could provide as a fellowship-trained microsurgeon. Instead, Patient SA was charged out-of-network-level co-insurance and permitted to be balance billed.

### F. Full and Fair Review under ERISA

58. 29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action

under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

59. Defendants did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder. Defendants did not provide full and fair review to Plaintiff.

60. In the Explanation of Benefits ("EOB") and appeal responses, Defendants Empire and Horizon failed to explain the true methodology by which they based their under-reimbursement determinations because when they stated that the determination was based on Plaintiff's out-of-network status or the 70th percentile of Fair Health, Defendants misrepresented the terms of the Plan. The Plan paid (a) billed charges for out-of-area services under the BlueCard program, and (b) reimbursed post-mastectomy breast reconstruction surgery in full "in a manner determined in consultation with the attending physician and the patient."

61. Under ERISA, when an insurer, claims administrator, or plan fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted his administrative remedies.

62. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

**The Fiduciary Duties of the Plan Defendant**

63. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), it must discharge its duties solely in the interest of Plan participants and beneficiaries like Patient SA. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

64. In this case, the Plan Defendant breached its fiduciary duties under ERISA by permitting Defendants Horizon and Empire to make coverage decisions for Patient SA, a participant of the Plan, in violation of the Plan's SPD.

## COUNT I

### CLAIM AGAINST DEFENDANT HORIZON FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

65. Defendant Horizon is obligated to pay benefits to the Plan participant in accordance with the terms of the Plan, and in accordance with ERISA. This obligation arises under the Blue Card Program, and under ERISA.

66. Defendant Horizon violated its legal obligations under this ERISA-governed Plan when it, together with Defendant Empire and as its agent, under-reimbursed Plaintiffs for breast reconstruction surgeries provided to Patient SA by Plaintiff, in violation of the terms of the Plan and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B), for failing to provide for full and fair review.

67. Defendant Horizon submitted two reconsideration responses to Plaintiff in which it falsely stated that under the Plan the claim had been paid correctly.

68. Under the rules of the Blue Card program, because Plaintiff's plan was based in Empire's exclusive allocated territory, but she received surgical services in Horizon's exclusive allocated territory, Plaintiff was required to submit its invoice to Defendant Horizon.

69. Plaintiff submitted an invoice to Defendant Horizon for $139,613.34.

70. Defendant Horizon together with Defendant Empire determined that the Allowed Amount was $4,095.81, leaving an under-reimbursed amount of $135,517.53. Defendant thereby reimbursed 3% of the total amount.

71. Defendant Horizon acted as Empire's agent under the Blue Card Program.

72. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claim was originally submitted to Defendant Horizon. They also seek attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Horizon.

## COUNT II

### CLAIM AGAINST DEFENDANT EMPIRE FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

73. The Plan Defendant delegated to its claims administrator, Defendant Empire, "fiduciary authority to determine claims for benefits under the Plan as well as the authority to act as the appropriate fiduciary under Section 503 of ERISA to determine appeals of any adverse benefit determinations under the Plan. . . . In carrying out this authority, Empire is delegated full discretion to determine eligibility for benefits under the Plan and to interpret the terms of the Plan."

74. Defendant Empire was obligated to pay benefits to the Defendant Plan participants and beneficiaries in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA.

75. Defendant Empire violated its legal obligations under this ERISA-governed Plan when it, together with Defendant Horizon, under-reimbursed Plaintiff for the breast reconstruction surgery provided to Patient SA by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

76. Plaintiff submitted an invoice for $139,613.34.

77.     Defendant Empire together with Defendant Horizon determined that the Allowed Amount was $4,095.81, leaving an under-reimbursed amount of $135,517.53. Defendant thereby reimbursed 3% of the total amount.

78.     Plaintiff seeks unpaid benefits and statutory interest back to the dates Plaintiff's claims were originally submitted to Defendant Empire. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Empire.

### COUNT III

### CLAIM AGAINST MACQUARIE HOLDINGS U.S.A., INC., PPO PLAN FOR VIOLATION OF ERISA 404 § (A)(1)(B)

79.     The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), it must discharge its duties solely in the interest of Plan participants and beneficiaries.

80.     The Plan Defendant must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

81.     An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity. The Plan Defendant cannot fully delegate its fiduciary responsibilities to administer claims to Empire and be free of its fiduciary responsibilities under ERISA.

82.     As a fiduciary, the Plan Defendant owed Plaintiff a duty of loyalty and the avoidance of self-dealing. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

83.     The Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that its claims administrator, Empire, was

reimbursing Plaintiff according to the Plan Defendant's SPD. Instead, Empire under-reimbursed Plaintiff for the surgeries. These surgeries were covered under the terms of the SPD.

84. Specifically, the Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that Empire reimbursed Plaintiff on behalf of its participant according to the Plan Defendant's SPD.

85. The Plan Defendant failed to monitor and correct Empire's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

86. The Plan Defendant also breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that Defendants Empire and Horizon provided correct and accurate representations of Plan terms in appeal responses to Plaintiff.

87. The Plan Defendant failed to monitor and correct Defendants Empire and Horizon's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

88. As a self-funded Plan, the Plan Defendant saved the under-reimbursed amount by allowing its claims administrator to pay Plaintiff in breach of the Plan's SPD, the Plan Defendant's own fiduciary duties, and in violation of ERISA.

89. Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a) Ordering Defendants to recalculate and issue unpaid benefits to Plaintiff;

(b) Ordering declaratory relief, surcharge, profits, and removal of the Plan Defendant for breach of its fiduciary duty and loyalty;

(c) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

      (d)      Awarding prejudgment interest; and

      (e)      Granting such other and further relief as is just and proper.

Dated: April 7, 2020

/s/ Michael F. Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiff Prestige Institute for Plastic Surgery, P.C., on behalf of Patient SA