# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRESTIGE INSTITUTE FOR PLASTIC SURGERY, P.C., on behalf of PATIENT SA<br><br>Plaintiff,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, and EMPIRE BLUE CROSS BLUE SHIELD, and MACQUARIE HOLDINGS U.S.A., INC., PPO PLAN,<br><br>Defendants. | Case No. 2:20-cv-07333-ES-CLW |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS THE COMPLAINT

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................... 7

   A.  Standard of Review ............................................................................................. 7

   B.  Plaintiff Has Standing under ERISA as a Designated Authorized Representative ............ 7

       1.  The Court Should Deny Defendants' Motions to Challenge Standing as Procedurally Improper ..................................................................................................... 7

       2.    The Court Should Still Deny Defendants' Standing Challenge under Rule 12(b)(6) ...... 9

       3.  Because the DAR Permits Plaintiff as Designated Authorized Representative to Pursue Benefit Claims and Appeals, Continuing Authorization to Pursue Litigation Should Not be Cut Off Artificially ..................................................................................... 10

   C.  The Complaint States a Claim against Empire and Horizon ........................................... 13

   D.  Defendant Horizon is a Proper Defendant ....................................................................... 15

   E.  The Plan is a Proper Defendant ....................................................................................... 17

IV.    CONCLUSION ............................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Cases**

*Acosta v. Bratcher*, 343 F. Supp. 3d 108 (W.D.N.Y. 2018) .......................................................... 19

*Acosta v. Pacific Enterprises*, 950 F.2d 611 (9th Cir. 1991) ..................................................... 6, 18

*Acosta v. Saakvitne,* 355 F. Supp. 3d 908 (D. Haw. 2019) .......................................................... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 7, 9

*Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*,
    2018 U.S. LEXIS 186320 (D.N.J. Oct. 31. 2018) ..................................................................... 14

*Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*,
    2018 U.S. LEXIS 47181 (D.N.J. Mar. 22, 2018) ....................................................................... 14

*Atlas Acquisitions, LLC v. Porania, LLC*,
    2019 U.S. Dist. LEXIS 200564 (D.N.J. Nov. 19, 2019) ............................................................. 7

*Carr v. Int'l Game Tech*, 770 F. Supp. 2d 1080 (D. Nev. 2011) ................................................. 18

*Cohen v. Kurtzman*, 45 F. Supp. 2d 423 (D.N.J. 1999) ................................................................. 8

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
    591 F.3d 1337 (11th Cir. 2009) ................................................................................................. 11

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016) ....................................................................... 8

*Egelhoff v. Egelhoffex rel Breiner*, 532 U.S. 141 (2001) ............................................................ 11

*Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012) ..................................... 11

*Evans v. Employee Benefit Plan Comp Dresser & McKee, Inc.*,
    311 F. App'x., 556 (3d Cir. 2009) .............................................................................................. 6

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ...................................................... 17

*Geddes v. United Staffing All. Employee Med. Plan*, 469 F.3d 919 (10th Cir. 2006) .............. 6, 16

*Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,
    2007 U.S. Dist LEXIS 94056 (D. N.J. December 26, 2007) .................................................... 12

*In re: Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017) .............................................. 19

*I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*,
  136 F.3d 114 (2d Cir. 1998) ................................................................... 11

*I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79 (D. Mass. 1998) ................ 11

*International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*,
  673 F.2d 700 (3d Cir. 1982) ................................................................... 8

*Krauss v. Oxford Health Plans, Inc*, 517 F.3d 614 (2d Cir. 2008) ............................. 15

*Lexington Ins. Co. v. Forest*, 263 F. Supp. 2d 986 (E.D. Pa. 2003) ............................. 8

*Leyse v. Bank of Am. Nat'l* Ass'n, 804 F.3d 316 (3d Cir. 2015) .................................. 9

*Lum v. Bank of Am.*, 361 F.3d 217 (3d. Cir. 2004) .............................................. 19

*MBody Minimally Invasive Surgery  v. Empire Healthchoice HMO, Inc.*,
  2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016) ........................................ 10

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) .............................................. 16

*Millennium Healthcare of Clifton v. Aetna Life Ins. Co.*,
  2019 U.S. Dist. LEXIS 224616 (D.N.J. Nov. 15, 2019) ........................................ 14

*Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986) ................ 12

*Nordyke v. Howmedica Osteonics Corp.*, 138 S. Ct. 1288 (Mar. 19, 2018) ........................ 19

*Omega Hosp., LLC. v. United Healthcare Servs.*, 345 F. Supp. 3d 712  (M.D. La. 2018) .......... 10

*Outpatient Specialty Surgery Partners, Ltd. v. UnitedHealth Ins. Co.*,
  2016 U.S. Dist. LEXIS 82312 (S.D. Tex. June 24, 2016) ...................................... 10

*Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*,
  2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015) ........................................ 10

*Rizzo-Rupon v. Int'l Ass'n of Machinists & Aero. Workers*,
  2019 U.S. Dist. LEXIS 215871 (D.N.J. Dec. 16, 2019) ........................................ 7

*Shah v. Horizon Blue Cross Blue Shield*,
  2017 U.S. Dist. LEXIS 23885 (D.N.J. Feb. 21, 2017) ........................................ 17

*Shah v. Horizon v. Blue Cross Blue Shield of N.J.*,
  2018 U.S. Dist. LEXIS 25695 (D.N.J. Feb. 16, 2018) ........................................ 16

*Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs.*,
  2020 U.S. Dist. LEXIS 73174 (D.N.J. Apr. 27, 2020) ........................................ 8

*Sweda v. Univ. of Pa.*, 923 F.3d 320 (3d Cir. 2019) ...................................................................... 17

*Univ. Spine Ctr. v. Aetna*, 774 Fed. App'x 60 (3d Cir. 2019) .................................................... 5, 7

*Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*,
    2018 U.S. Dist. LEXIS 148387 (D.N.J. Aug. 29, 2018) ........................................................ 14

*Valdes v. Century 21 Real Estate, LLC*,
    2019 U.S. Dist. LEXIS 182616 (D.N.J. Oct. 22, 2019) ........................................................... 7

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................................ 7

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*,
    2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ........................................................... 11

*Wilson v. Rackmill*, 878 F.2d 772 (3d Cir. 1989) .......................................................................... 7

*Wolff v. Aetna Life Ins. Co.*, 2020 U.S. Dist. LEXIS 57864 (M.D. Pa. Apr. 2, 2020).................. 18

*Wragg v. Ortiz¸* 2020 U.S. Dist. LEXIS 92033 (D.N.J. May 27, 2020) ..................................... 8, 9

**Statutes**

29 U.S.C. § 1104(a) ........................................................................................................................ 17

29 U.S.C. § 1109(a) ........................................................................................................................ 17

ERISA .................................................................................................................................... passim

Women's Health and Cancer Rights Act ............................................................................... passim

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................. passim

Rule 19 .................................................................................................................................. passim

**Regulations**

§ 2590.715-2719(a)(2)(iii) ............................................................................................................. 10

80 Fed. Reg. 72266 (Nov. 18, 2015) ............................................................................................... 9

Plaintiff Prestige Institute for Plastic Surgery, P.C., on behalf of Patient SA ("Prestige Institute" or "Plaintiff"), hereby respectfully files this memorandum of law in opposition to the motions of Defendants Horizon Blue Cross Blue Shield ("Horizon"), Empire Blue Cross Blue Shield ("Empire"), and Macquarie Holdings U.S.A., Inc. PPO Plan (the "Plan Defendant") (together, "Defendants") to dismiss the Complaint under Rule 12(b)(6).[1]  For the reasons that follow, Defendants' motions should be denied.

## I.      <u>INTRODUCTION</u>

This ERISA case involves Defendants' substantial under-reimbursement to Plaintiff for post-mastectomy breast reconstruction surgical services that must be covered and reimbursed under the Plan and under federal law. Joseph F. Tamburrino, M.D. ("Tamburrino"), a breast reconstruction surgeon and member of Plaintiff Prestige Institute, performed a specialized breast reconstruction surgery on the patient called deep inferior epigastric perforator ("DIEP").  Compl. ¶ 6. DIEP is the gold standard for breast reconstruction, but it is so specialized and complicated that it must be performed by a fellowship-trained microsurgeon like Dr. Tamburrino. Compl. ¶ 37.

Plaintiff was out-of-network with Defendant Empire.  Compl. ¶ 7.  However, the patient did not have reasonable access to a network provider for breast reconstruction surgery.  Compl. ¶ 37.

The Patient was a plan participant of the Plan, a self-funded plan. As a self-funded plan, the Plan pays all reimbursement amounts itself.[2]  Defendant Empire was the claims administrator of the Plan and the Plan delegated fiduciary duties to Empire.  Compl. ¶ 2.  In addition, Defendant

---

[1] The three Defendants filed separate motions to dismiss.  Plaintiff files one brief in opposition to each of the motions.

[2] This liability may be subject to what is termed the "stop loss" amount.  It is unknown whether the Plan purchased stop loss insurance.

Horizon made its own internal appeals determinations, making it both an agent of Empire and a co-fiduciary of the Plan.  Compl. ¶ 39.

After performing the DIEP surgery, Plaintiff submitted an invoice to Defendant Horizon for $139,613.34, for which it was reimbursed $4,095.81.  After filing a grievance, Defendant Empire stated that the reimbursement amount, which it said was the "Maximum Allowed Amount," was based on the 70th percentile of Fair Health.  It further stated that the amount paid was not the 70th percentile of Fair Health however, and that an additional amount would be paid. The Complaint alleges that Defendants failed to reimburse any further amount.  Compl. ¶ 28.

Under the terms of the Plan, the amount of reimbursement is not based on Fair Health because Plaintiff was not in Empire's allocated exclusive market, which is encompassed by certain counties in downstate New York.  The exclusive market allocation among BCBS licensees is a creation of the Blue Cross Blue Shield Association ("BCBSA") licensing agreement which every BCBS licensee must execute and has (including Defendants Empire and Horizon).  The licensing agreement created exclusive markets for each licensee and precluded licensees from competing in each others' markets. Defendant Horizon's exclusive market is the State of New Jersey. Compl. ¶¶ 17-24.[3]

To protect this exclusive market scheme, the BCBSA also created Host and Home Plans. The insurer through which the member is insured is the Home Plan.  In this case, the Home Plan is Defendant Empire.  The insurer where the physician's service is provided is referred to as the Host Plan.  In this case, the Host Plan is Defendant Horizon.  Compl. ¶ 22.

---

[3] There are two different "markets," one for selling health insurance and the other for contracting with providers exclusive to the BCBS licensees. A BCBS licensee may not sell health insurance outside of its exclusive market, but it may contract with providers both in its exclusive market area and in counties contiguous to its exclusive market area.

Because Dr. Tamburrino is a New Jersey-based provider, Defendant Empire was prohibited by the BCBSA licensing agreement from contracting with him directly, even if Empire wished to have breast reconstruction providers in its network and Dr. Tamburrino wished to be in-network with Empire. Dr. Tamburrino could only be in-network with Defendant Horizon under the rules, but he was not. Compl. ¶ 23.

With this background, under the terms of the Plan, the "Maximum Allowed Amount" only applied when a provider was out-of-network and within Defendant Empire's exclusive market (that is, within certain New York counties). The surgery was performed in New Jersey, which was within Defendant Horizon's exclusive market. Compl. ¶ 32.

Rather, under the Plan and under the BCBS licensing agreement (and BCBS Inter-Plan Services, another licensee created to handle this precise situation under the BlueCard Program, and did so), Plaintiff was an *out-of-area* provider. Compl. ¶ 33. Under the Plan, reimbursement of out-of-network out-of-area providers was distinct from reimbursement of out-of-network in-area providers (that is, in Empire's allocated market). For out-of-network out-of-area providers, the Plan sets out the reimbursement rate as follows:

> Whenever you access covered charges for your healthcare services outside Empire's service area and the claim is processed through the BlueCard Program, the amount you pay for covered healthcare services is calculated based on the lower of:
>
> • The billed covered charges for your covered services; or
>
> • The negotiated price that the Host Blue makes available to Empire.

Compl. ¶ 34.

Defendant Horizon, the Host Blue plan, did not negotiate with Plaintiff. The Plan therefore required that Defendants reimburse Plaintiff's billed charges. Compl. ¶ 35.

The Administrative Services Agreement between Empire and the Plan confirmed this conclusion. It states: "Empire may pay Claims from non-Network Providers outside of Empire's service area based on the Provider's Billed Charges, such as in situations where a Member did not have reasonable access to a Network Provider." Compl. ¶ 34. The Complaint alleges that the patient had no reasonable access to an in-network Horizon surgeon qualified to perform DIEP surgery. Compl. ¶¶ 37, 54, 57.

Post-mastectomy breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires insurers to cover and to reimburse post-mastectomy breast reconstruction surgery. The WHCRA prohibits insurers from reducing or limiting the reimbursement of an attending provider. The WHCRA was incorporated into the Plan and its violation represents a violation of ERISA.

The Plan Defendant was a fiduciary under ERISA, 29 U.S.C. § 1104(a)(1)(B), and it must discharge its duties solely in the interest of Plan participants. It cannot permit its claim administrator to make claims determinations that violate Plan terms.

Defendants move to dismiss solely under Rule 12(b)(6) for several reasons. Defendants contend that Plaintiff does not have *standing* because they state there is an anti-assignment provision in the Plan and that Plaintiff should not be permitted to "circumvent" this provision through what they dismiss as a "purported" Designation of Authorized Representation under ERISA. The procedural and substantive flaws in Defendants' contention are manifold. Defendants did not move to dismiss for lack of standing under Rule 12(b)(1); they moved to dismiss for failure to state a cause of action under Rule 12(b)(6).[4] Rule 12 is a carefully reticulated

---

[4] A motion for lack of standing must be brought under Rule 12(b)(1), since it is Defendants' position that without a Designation of Authorized Representative, Plaintiff could not plead subject-matter jurisdiction under ERISA.

rule.  Rule 12(b)(6) should not be permitted to "circumvent" Rule 12(b)(1) or any of the other five

defenses included within Rule 12.[5]

The Designation of Authorized Representative should also not be the subject of dismissal.

The Complaint alleges that an Authorized Representative may bring litigation on behalf of a Plan

Participant.  Compl. ¶ 46.  There is a fundamental basis for this in the United States Department

of Labor final rulemaking, set out in the Federal Register, and entitled to *Chevron* deference.

Defendant Empire also contends that the Complaint should be dismissed under Rule

12(b)(6) because "nothing in the Plan documents' pertinent sections mandate that the Plan pays

100% of whatever charges Plaintiff submits as an out-of-network benefit for the Patient's

services."  Defendant Horizon contends that "Prestige merely alleges that because it was not paid

its actual charge, 'Defendants' failed to comply with the terms of the Plan. But the Complaint does

not identify any Plan provision from which the Court may derive a plausible inference that the

Plan's terms required Horizon – as the *Host Plan,* no less – to reimburse Prestige dollar-for dollar

at its actual billed charge." (emphasis in original).

Defendants Empire and Horizon ignore the Complaint's careful allegations concerning the

terms of the Plan regarding the out-of-network *out-of-area* reimbursement rate, which requires

reimbursement based on the billed amount in the absence of a negotiated amount.  They also

misconstrue and misinterpret the WHCRA, which has an explicit reimbursement requirement that

both Defendants ignore.[6] Also of interest is Horizon's apparent suggestion (although possibly

---

[5] To be clear, Plaintiff's Rule 12(b)(1) argument is limited to Defendants' motions to dismiss for lack of standing based on the Designation of Authorized Representative ("DAR") under ERISA. The DAR permits direct representation ("on behalf of Patient SA").  An assignment permits derivative representation, which is merits based and may be challenged under Rule 12(b)(6). *Univ. Spine Ctr. v. Aetna*, 774 Fed. App'x 60, 61 n.1 (3d Cir. 2019).

[6] Rather than attempt to rebut Plaintiff's statutory interpretation, Defendant Horizon engages in simple name calling, labelling it a "ridiculous thing," and a "garbled interpretation" – all the while

merely rhetorical) that it was immune from following the terms of the Plan because it, as compared to Empire, was the Host Plan.

Defendant Horizon contends that a judgment may not be entered against it because it is not the Plan.  Citing to out-of-date cases, Horizon suggests that "total control" over the administration of benefits is required.  Recent caselaw in this Circuit and elsewhere holds that "total control" is not the proper standard.  The appropriate standard is whether an entity is a "functional fiduciary." Defendant Horizon was a "functional fiduciary," and it made two claims determinations on appeal, demonstrating control over the Plan.  Compl. ¶ 40. The Third Circuit found that a party exercises control over the administration of benefits if it possesses the final authority to authorize or disallow a claim for benefits under the plan. This authority need not be exclusive. *Evans v. Employee Benefit Plan Comp Dresser & McKee, Inc.*, 311 F. App'x., 556, 558 (3d Cir. 2009) (unpublished).  In addition, Horizon was Empire's agent, and Empire's actions are attributable to Horizon.  *Geddes v. United Staffing All. Employee Med. Plan*, 469 F.3d 919, 926 (10th Cir. 2006).

The Plan Defendant contends that it is immune from suit because "it cannot be its own fiduciary."  This conclusion is without merit. The Plan Defendant omits the second half of the analysis: "To the extent that a plaintiff seeks 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' the plan may be named as a defendant. . . . [Therefore, the plaintiff may] join the Plan in his action for breach of fiduciary duty in order that he may obtain the relief sought."  *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991).

Defendants' motions to dismiss the Complaint should be denied.

---

carefully and strategically *not* citing to the specific reimbursement provision contained in the WHCRA.

## II.   ARGUMENT

### A.   Standard of Review

Fed. R. Civ. P. 12(b)(6) permits the court to dismiss a complaint only if a plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Rizzo-Rupon v. Int'l Ass'n of Machinists & Aero. Workers*, 2019 U.S. Dist. LEXIS 215871, *3 (D.N.J. Dec. 16, 2019).  The court must take all allegations in the complaint and treat them as true and view them in the light most favorable to the plaintiff.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Rizzo-Rupon*, 2019 U.S. Dist. LEXIS 215871, *3 (quoting *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Atlas Acquisitions, LLC v. Porania, LLC*, 2019 U.S. Dist. LEXIS 200564, *3-4 (D.N.J. Nov. 19, 2019); *Valdes v. Century 21 Real Estate, LLC*, 2019 U.S. Dist. LEXIS 182616, *3 (D.N.J. Oct. 22, 2019).

### B.   Plaintiff Has Standing under ERISA as a Designated Authorized Representative

#### 1.   The Court Should Deny Defendants' Motions to Challenge Standing as Procedurally Improper

Defendants move to dismiss the Complaint under Rule 12(b)(6) for lack of standing under ERISA based on an anti-assignment provision in the Plan *and* the Designated Authorized Representative. Although the Third Circuit has suggested that Rule 12(b)(6) is proper to challenge standing based on an assignment because it is merits based and a derivative claim, *Univ. Spine Ctr. v. Aetna*, 774 Fed. App'x 60, 61 n.1 (3d Cir. 2019), this is not the case for the claim under the

Designated Authorized Representative, which is a direct claim on behalf of the patient. *See Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs.*, 2020 U.S. Dist. LEXIS 73174, *10 n.6 (D.N.J. Apr. 27, 2020) (distinguishing derivative from direct claims and noting that a motion to dismiss for lack of standing is typically brought under Rule 12(b)(1)). *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 1999) ("a jurisdictional attack pursuant to Rule 12(b)(1) carries with it different burdens than an attack on the merits"); *Lexington Ins. Co. v. Forest*, 263 F. Supp. 2d 986, 996 (E.D. Pa. 2003) ("The Third Circuit has cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion").

As the court in *Wragg v. Ortiz¸* 2020 U.S. Dist. LEXIS 92033, *38 (D.N.J. May 27, 2020), held:

> Under Rule 12(b)(1) "[i]f the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction." *Id.* (citing *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 712 (3d Cir. 1982)). "The court may then determine jurisdiction by weighing the evidence presented by the parties." *Id.* "However, if there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination." *Id.* "Improper consideration of a merits question under Rule 12(b)(1) significantly raises both the factual and legal burden on the plaintiff." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

If Defendants wish to challenge the DAR as the basis for lack of Plaintiff's standing in this case, and therefore the absence of subject-matter jurisdiction under ERISA, they must do so under Rule 12(b)(1) in order to permit Plaintiff to respond with evidence supporting jurisdiction. Since there is a dispute of material fact, the Court must conduct a plenary trial prior to any jurisdictional determination. Defendants would have the Court skip these necessary steps and dismiss under Rule 12(b)(6) based on their counter-factual allegations that the DAR does not apply because it "circumvents" an anti-assignment provision. However, since the DAR is an independent source of jurisdiction, this is clearly untrue.

Defendants chose not to challenge subject-matter jurisdiction under the correct procedural device, which is Rule 12(b)(1), not Rule 12(b)(6). Their motions should be denied.

### 2. The Court Should Still Deny Defendants' Standing Challenge under Rule 12(b)(6)

The Third Circuit noted in *Leyse v. Bank of Am. Nat'l* Ass'n, 804 F.3d 316, 320 n.3 (3d Cir. 2015), that statutory standing is non-jurisdictional. Even if the Court were to treat Defendants' challenge to the DAR under Rule 12(b)(6), it should not dismiss the Complaint. "If the challenge to the complaint is, in essence, failure to state a claim, the Court must accept the well-pled allegations as true." *Wragg¸* 2020 U.S. Dist. LEXIS 92033, at *38 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Complaint alleges that Plaintiff received the DAR from the Patient and quotes from it at length. The DAR conveyed to the Plaintiff pursuant to ERISA "any claim, cause of action, or other right I may have to such group health plans" including judicial actions.

The DAR derives from ERISA rulemaking, 29 C.F.R. § 2560.503-1(b)(4) ("The claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination."). Although Defendants seize upon the word "appeal" in contending that that a DAR is limited to appeals, there is nothing in this language that limits an authorized representative to appeals unless the patient wishes the DAR to be so limited.

Evidence contained in the Federal Register, pursuant to final agency rulemaking, demonstrates that under ERISA an authorized representative is entitled to maintain a § 502(a)(1)(B) claim on behalf of the patient. Under 80 Fed. Reg. 72266 (Nov. 18, 2015), "The claimant is also entitled to pursue any available remedies under section 502(a) of ERISA or under State law, as applicable, on the basis that the plan or issuer has failed to provide a reasonable internal claims and appeals process that would yield a decision on the merits of the claim."

Critically, § 2590.715-2719(a)(2)(iii), also included in the Federal Register and subsequently codified, defines "claimant" as "an individual who makes a claim under this section. For purposes of this section, references to claimant include a claimant's *authorized representative*." Therefore, both a claimant *and a claimant's authorized representative* have standing to maintain a § 502(a)(1)(B) claim. *See* Compl. ¶ 46.[7]

<div style="text-align:center">

**3.**     **Because the DAR Permits Plaintiff as Designated Authorized Representative to Pursue Benefit Claims and Appeals, Continuing Authorization to Pursue Litigation Should Not be Cut Off Artificially**

</div>

"ERISA regulations require that an employee benefit plan's 'claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.'" *Outpatient Specialty Surgery Partners, Ltd. v. UnitedHealth Ins. Co.*, 2016 U.S. Dist. LEXIS 82312, *10 (S.D. Tex. June 24, 2016). Payments to patients' authorized representatives are payments to patients themselves and do not implicate a plan's anti-assignment clause. *Omega Hosp., LLC. v. United Healthcare Servs.*, 345 F. Supp. 3d 712, 731 (M.D. La. 2018). Defendants' "circumventing" contention is wrong.

The United States Supreme Court made clear that ERISA must be interpreted uniformly and must not vary state by state on the basis of each jurisdiction's law. *Egelhoff v. Egelhoffex rel*

---

[7] Defendants' citation to *MBody Minimally Invasive Surgery v. Empire Healthchoice HMO, Inc.*, 2016 U.S. Dist. LEXIS 66149 (S.D.N.Y. May 19, 2016), is inapposite. In *MBody Minimally Invasive Surgery*, the court noted that the "plaintiffs fail to explain how their purported status as "authorized representatives" under this regulation is distinguishable from their theory that they are proper assignees of their patients' Claims." In *Prof'l Orthopedic Associates, P.A. v. Excellus Blue Cross Blue Shield*, 2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015), the plaintiff did not point to a "Designation of Authorized Representative" form or to any rulemaking authority. Here, 29 C.F.R. § 2560.503-1(b)(4) and the allegation that the patient designated Plaintiff as the Authorized Representative, Compl. ¶ 46, distinguishes both cases.

*Breiner*, 532 U.S. 141, 149 (2001).  ERISA is to be interpreted in light of "federal common law" and in a manner that furthers "ERISA's purposes." *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136 (3d Cir. 2012).

The issue of uniformity was resolved in the interpretation of the assignment provision itself.  Health insurers and plans initially argued that assignments of benefits were limited to internal appeals and that assignees could not pursue federal litigation under ERISA –the identical argument Defendants make with respect to the Designation of Authorized Representative form in this case.

The Third Circuit – and virtually every other circuit court – rejected this cramped reading. In *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014), the Third Circuit adopted the majority position on the issue of standing-by-assignment. *See I.V. Servs. of Am. v. Trustees of the Am. Consulting Eng'rs Council Ins. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA").

Courts understood that without standing to sue under ERISA, any purported rights could not be enforced and would be rendered illusory.  *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352-53 (11th Cir. 2009); *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F. Supp. 2d 79, 84 (D. Mass. 1998) ("An assignment to receive payment of benefits necessarily incorporates the right to seek payment.  As Plaintiff argues, the right to receive benefits would be hollow without such enforcement capabilities."); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*, 2007 U.S. Dist. LEXIS 61137, at *12 (D.N.J. Aug. 20, 2007) ("[T]his Court …finds that it is illogical to recognize that [a provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right.");

11

*Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 2007 U.S. Dist. LEXIS 94056, at * 7-*8, n.1 (D. N.J. December 26, 2007) ("[A]n assignment of benefits under a plan includes the assignment of the right to sue for such benefits, for without the latter, the former would be unenforceable."). Even where monies are paid to the patient, the patient must then forward these monies to the provider.

The same logic applies here.  The DAR should not be limited to internal appeals for the same reason that assignments were held as not so limited:  it would make it "unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment," and it would eliminate "the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan."  *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986).

Recognition of the DAR as encompassing litigation on behalf of the patient in order to enforce the patient's appellate rights would not undo contractual anti-assignment provisions.  The two are fundamentally different.  An Authorized Representative is not an assignee. She does not own the plan benefits because they have not been assigned to her. She does not maintain an action in her own name, but on behalf of the patient she represents. The action always belongs to the patient, the Plan member.

To hold that a DAR only applies to internal appeals gives every incentive to insurers and plans to deny internal appeals, knowing that after these appeals only a plan member may bring an ERISA action – the person least able to maintain an action individually and financially, find and pay qualified counsel, and assist in trying the case, especially since the member may also be ill from the symptoms of the disease underlying her claim or recuperating from surgery, or who may

have died from this illness.[8]  The majority of Americans with insurance will be forced to go to in-network providers, even when they pay extra premiums for out-of-network coverage. Out-of-network coverage thereby becomes illusionary. When in-network providers cannot perform the specific surgical procedures required because they are unqualified to do so (as in breast reconstruction procedures often requiring fellowship-trained surgeons), plan members may not have the surgery they are entitled to have under their plans.  Plan members either will not receive optimum medical care or will forgo this care entirely. That is what is at stake here.[9]

### C.     The Complaint States a Claim against Empire and Horizon

Defendant Empire contends that the Complaint should be dismissed under Rule 12(b)(6) because "nothing in the Plan documents' pertinent sections mandate that the Plan pays 100% of whatever charges Plaintiff submits as an out-of-network benefit for the Patient's services." Defendant Horizon contends that "Prestige merely alleges that because it was not paid its actual charge, 'Defendants' failed to comply with the terms of the Plan."

Missing from Defendant' Empire and Horizon's rendition of the Complaint, yet alleged in the Complaint, are two critical allegations.  First, the Complaint alleges that the surgical services in this case were not merely out of network; they were *out-of-area*.  Under the Plan, reimbursement

---

[8] Insurers often serve counterclaims or recoupment actions against plan members who sue to discourage them from continuing with their litigation.  Since these actions cannot be defended on a contingency basis, this is an effective tactic against patients with limited financial means.

[9] The choice is stark: disregarding the explicit reimbursement provision of the WHCRA, as Defendants contend, or ignoring the explicit Plan terms of this case, the Patient (and all similar patients) would be faced with the choice of foregoing post-mastectomy breast reconstruction surgery altogether – although it is covered under the WHCRA – because there is no qualified in-network surgeon to perform it – or agree to have it performed by the only surgeons qualified to do so – out-of-network surgeons – and become liable for a six-figure medical bill despite having out-of-network medical coverage from her insurer.  The former choice results in permanent physical disfigurement but substantial insurer savings.  The latter choice results in potential medical bankruptcy.

of out-of-network out-of-area providers was distinct from reimbursement of out-of-network in-area providers.  For out-of-network out-of-area providers, the Plan describes the reimbursement rate as follows:

> Whenever you access covered charges for your healthcare services outside Empire's service area and the claim is processed through the BlueCard Program, the amount you pay for covered healthcare services is calculated based on the lower of:
>
> • The billed covered charges for your covered services; or
>
> • The negotiated price that the Host Blue makes available to Empire.

Compl. ¶ 34.

Defendant Horizon, the Host Blue plan, did not negotiate with Plaintiff.[10]   The Plan therefore required that Defendants reimburse Plaintiff's billed charges. Compl. ¶ 35. Defendants failed to do so.  The Complaint alleges that Defendants paid the out of network *in area* rate (and not even that). Compl. ¶ 29.  These allegations are sufficient under Rule 8(a) to survive a motion to dismiss under Rule 12(b)(6).[11]

Second, Defendants Empire and Horizon misinterpret the WHCRA, which has an explicit reimbursement requirement that Defendants ignore. This law, codified at 29 U.S.C. § 1185b, states that a "group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not . . . penalize or otherwise *reduce or limit the*

---

[10] Defendant Empire, as the Home Plan, *could not* negotiate with Plaintiff as Plaintiff was outside of its allocated exclusive area.

[11] Defendants' citations are inapposite.  In *Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*, 2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018); and *Atlantic Plastic and Hand Surgery, P.A. v. Anthem Blue Cross and Health Ins. Co.*, 2018 U.S. Dist. LEXIS 186320 (D.N.J. Oct. 31, 2018), the plaintiff alleged the plan failed to pay usual and customary charges but did not allege that the plan actually promised to pay such charges. The same was true in *Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, 2018 U.S. Dist. LEXIS 148387 (D.N.J. Aug. 29, 2018) ("No benefit plan term is identified as being violated."); and *Millennium Healthcare of Clifton v. Aetna Life Ins. Co.*, 2019 U.S. Dist. LEXIS 224616 (D.N.J. Nov. 15, 2019) ("Plaintiff fails to allege what the relevant provisions of the Patient's Plan state").

*reimbursement* of an attending provider." (emphasis added).  Contrary to Defendants, who contend that the WHCRA is limited to coverage of post-mastectomy breast reconstruction surgery, it is not; and although they may posit horror stories of surgeons billing unlimited claims to insurers, all of this is undermined by Plaintiff's claim in this case, which was based on the surgeon's reasonable and customary fee.

In any event, Plaintiff does not allege a separate cause of action under the WHCRA. Rather, Plaintiff alleges that because the terms of this statute were incorporated into the Plan, as they were required to be, 29 U.S.C. § 1185b(b), Defendants' violation of its terms was a violation of the terms of the Plan and therefore a violation of ERISA.[12]

The Court need not, at this phase of the case, determine whether Plaintiff has proved its case, borne its burden of persuasion, or even made a *prima facie* case. The sole issue before this Court is whether Plaintiff has alleged plausible facts that if taken as true could lead to the reasonable inference that Defendants are liable for the alleged violation of ERISA. Plaintiff has done so and in so stating a claim the motions to dismiss should be denied.

### D.  <u>Defendant Horizon is a Proper Defendant</u>

Defendant Horizon contends that a judgment may not be entered against it because it is not the Plan.  Horizon suggests that "total control" over the administration of benefits is required. Recent caselaw in this Circuit holds that "total control" is not the proper standard.  The appropriate standard is whether an entity is a "functional fiduciary."  Defendant Horizon was a "functional fiduciary," and made a claims determination on appeal, demonstrating control over the Plan.

---

[12] *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614 (2d Cir. 2008), is distinguishable. The plaintiff's claim for reimbursement was confined to the cost-sharing amounts consistent with those of other plans under 29 U.S.C. 1185b(a), and the court had no occasion to make any decision concerning the actual reimbursement amount mandated under 29 U.S.C. 1185b(c).

Compl. ¶ 40. Courts have found that a party exercises control over the administration of benefits if it possesses the final authority to authorize or disallow a claim for benefits under the plan. This authority need not be exclusive. *Evans v. Employee Benefit Plan Comp Dresser & McKee, Inc.*, 311 F. App'x., 556, 558 (3d Cir. 2009) (unpublished).  In addition, Horizon was Empire's agent, and Empire's actions are attributable to Horizon.  *Geddes,* 469 F.3d at 926; *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA, however, defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, see 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties") (emphasis in original).

Section 3(21) of ERISA defines a fiduciary as anyone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  The Complaint alleges that Plaintiff submitted invoices to Horizon.  Compl. ¶ 25. It further alleges that it was Horizon (not Empire) that responded to and made an appeal determination. Compl. ¶ 39.  When Plaintiff appealed again, it was Horizon that denied the appeal. Compl. ¶ 40.  The Complaint alleges that Horizon was not only exercising its own discretionary authority, it was also an agent of Empire as the Home Plan. *See Shah v. Horizon v. Blue Cross Blue Shield of N.J.*, 2018 U.S. Dist. LEXIS 25695, *6 (D.N.J. Feb. 16, 2018) ("Put simply, Plaintiff has plead facts that plausibly establish that Defendant controls the administration of benefits under the plan.").

The Complaint alleges that Horizon exercised its discretionary authority as the Host Plan to deny appeals.  The factual issue of the amount of Horizon's discretion over the Plan raises

matters outside the pleadings that cannot be resolved on a motion to dismiss. *Shah v. Horizon Blue Cross Blue Shield*, 2017 U.S. Dist. LEXIS 23885, *8 (D.N.J. Feb. 21, 2017).[13]

Horizon also relies on the wrong ERISA provision, relying on § 502(d)(2), which permits a money judgment against an employer plan. However, Plaintiff did not bring such a claim. It brought a § 502(a)(1)(B) claim for unpaid benefits against Horizon as a functional fiduciary.

Horizon's motion to dismiss should be denied.

### E.   The Plan is a Proper Defendant

As an initial matter, the Third Circuit declined to extend *Twombly* to breach of fiduciary duty claims under ERISA because to do so would "invert the principle that the complaint is construed most favorably to the nonmoving party." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 (3d Cir. 2019).

Under 29 U.S.C. § 1104(a), fiduciaries are held to the prudent person standard. Fiduciaries must discharge their duties "with respect to a plan solely in the interest of participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and beneficiaries." Fiduciaries are personally liable for losses due to breach. 29 U.S.C. § 1109(a).

The Plan Defendant contends that it is immune from suit because "it cannot be its own fiduciary." This is true but incomplete. The Plan Defendant leaves off the remaining analysis: "To the extent that a plaintiff seeks 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' the plan may be named as a defendant. . . . [Therefore, the plaintiff may] join

---

[13] Horizon's denial of its fiduciary status is curious as it would result in *de novo* review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

the Plan in his action for breach of fiduciary duty in order that he may obtain the relief sought." *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991).

In *Wolff v. Aetna Life Ins. Co.*, 2020 U.S. Dist. LEXIS 57864, *8 (M.D. Pa. Apr. 2, 2020), the court held that the "proper defendant in a § 502(a)(1)(B) claim is the plan itself or a person who controls the administration of benefits. 'Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B).'"

The SPD and its amendments, Doc. 19-3, do not show that the Plan or the Plan Administrator delegated any of its fiduciary duties. The Court should credit the Complaint's factual allegations concerning the Plan as a functional fiduciary.

This is the end of the analysis at this stage of the proceedings – on a motion to dismiss under Rule 12(b)(6). However, even if there is evidence that the Plan or Plan Administrator delegated its fiduciary duty, "the power to appoint and remove an ERISA fiduciary gives rise to a duty to monitor, and results in the appointing and removing party being a de facto fiduciary with respect to such appointment, monitoring and removal." *Carr v. Int'l Game Tech*, 770 F. Supp. 2d 1080, 1090 (D. Nev. 2011); *see* Compl. ¶ 87 ("The Plan Defendant failed to monitor and correct Defendants Empire and Horizon's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so."); Compl. Wherefore Demand (b).

Finally, the Court should not dismiss the Plan because it is an indispensable party under Rule 19(a). The Plan is self-funded, meaning that it, rather than Defendants Horizon and Empire, is liable for the unpaid benefits sought in this action.[14] While in fully insured plans the insurer is

_____

[14] Generally, Administrative Service Agreements between claims administrators and plans require the claims administrators to indemnify the plan and provide legal counsel for actions for unpaid benefits against plans, but require plans to remain liable for the unpaid benefits. This is true in this case. The ASA states: "Under all circumstances, Employer shall be liable to pay Plan benefits awarded or paid by settlement, judgment, or otherwise." The Court may consider a document

liable for unpaid benefits, that is not the case here.  In the Plan's absence the Court cannot provide complete relief to the parties, including Plaintiff.  Under ERISA the claims administrator and other functional fiduciaries who exercise discretionary authority over administration of benefits are proper parties when they possess final authority to authorize or disallow a claim for benefits. The Plan itself, which is responsible for payment of benefits, is an indispensable party.

The Complaint alleges that jurisdiction and venue are proper over the Plan, Compl. ¶¶ 10-12, which the Plan does not contest in its motion to dismiss. Where severance would violate Rule 19, the case must go forward in its entirety, with all parties present, in a forum where jurisdiction and venue are proper as to the indispensable party. *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 405 (3d Cir. 2017), *cert. denied*, *Nordyke v. Howmedica Osteonics Corp.*, 138 S. Ct. 1288 (Mar. 19, 2018).

Courts have held ERISA plans and others are indispensable parties.  *See Acosta v. Saakvitne,* 355 F. Supp. 3d 908, 919 (D. Haw. 2019); *Acosta v. Bratcher*, 343 F. Supp. 3d 108, 114 (W.D.N.Y. 2018) (in Consent Order and Judgment entered into between United States Department of Labor and private parties, Plan was named as a Defendant for the purpose of ensuring complete relief among the parties under Rule 19).

---

relied upon in the Complaint.  Compl. ¶ 36.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d. Cir. 2004).

## IV.     <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court deny Defendants' motions to dismiss the Complaint.

Dated: July 27, 2020

<div style="margin-left:40%">

Michael F. Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

/s/ Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

*Attorneys for Plaintiff Prestige Institute for Plastic Surgery, P.C., on behalf of Patient SA*

</div>