**Not for Publication**

UNITED STATES DISTRICT COURT
THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| **PRESTIGE INSTITUTE FOR** | : | |
| **PLASTIC SURGERY, P.C.,** *o/b/o* | : | |
| **Patient S.A.** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.: 20-3733 (ES) (CLW)** |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **HORIZON BLUE CROSS BLUE** | : | |
| **SHIELD OF NEW JERSEY;** | : | |
| **EMPIRE BLUE CROSS BLUE** | : | |
| **SHIELD; and MACQUARIE** | : | |
| **HOLDINGS U.S.A., INC. PPO PLAN,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**SALAS, DISTRICT JUDGE**

Plaintiff Prestige Institute for Plastic Surgery, P.C. ("Prestige") sues Defendants Horizon

Blue Cross Blue Shield of New Jersey ("Horizon"), Empire Blue Cross Blue Shield ("Empire"),

and Macquarie Holdings U.S.A., Inc., PPO Plan ("Macquarie"), under the Employee Retirement

Income Security Act ("ERISA").  (D.E. No. 1 ("Compl.")).  Defendants move to dismiss the

Complaint under Federal Rule of Civil Procedure 12(b)(6).  (D.E. Nos. 17–19).  The Court has

considered the parties' arguments and decides this matter without oral argument.  *See* Fed. R. Civ.

P. 78(b); L. Civ. R. 78.1(b).  As set forth below, the motions to dismiss are GRANTED.

## I.     BACKGROUND

As alleged in the Complaint, on December 27, 2016, Dr. Tamburrino performed a

specialized breast reconstruction surgery on Patient SA in New Jersey.  (Compl. ¶¶ 5 & 24).

Patient SA is a beneficiary of a self-funded ERISA Plan, under which Empire is the claims

administrator. (*Id.* ¶ 2). Empire, like Horizon, is a Blue Card Blue Shield licensee and therefore

participates in the Blue Card Program, under which each licensee is allocated a specific geographic

market. (*Id.* ¶ 17). Empire covers New York, and Horizon covers New Jersey. (*Id.* ¶¶ 18–19).

As a result, Empire was considered the Home Plan—because Patient SA enrolled in the Plan

through New York—and Horizon was considered the Host Plan—because the surgical services

occurred in New Jersey. (*Id.* ¶¶ 3 & 22). Dr. Tamburrino did not participate in either Empire or

Horizon's network of contracted healthcare providers. (*Id.* ¶¶ 7 & 23). Under the Blue Card

Program, Prestige billed Horizon for the surgery, whose role as Host Plan was to facilitate the

billing with Empire—the Home Plan. (*Id.* ¶ 25). Of the $139,613.34 bill, Prestige recouped

$4,095.81. (*Id.*).

Prestige claims that amount was insufficient under Patient SA's Plan. Specifically,

Prestige points to this provision in the Plan:

> Whenever you access covered charges for your healthcare services
> *outside Empire's service area* and the claim is processed through
> the BlueCard Program, the amount you pay for covered healthcare
> services is calculated based on the lower of:
> - The billed covered charges for your covered services; *or*
> - *The negotiated price that the Host Blue makes available to
>   Empire.*

(*Id.* ¶ 34 (emphasis added); *see also* D.E. No. 17-4, Ex. A, Patient SA's ERISA Plan, at 8).[1]

Because Dr. Tamburrino performed services outside of New York—i.e., outside of Empire's

service area—and because Horizon—the Host Plan—did not make available a negotiated price to

Prestige, Prestige claims that it is entitled to 100% of the billed charges pursuant to the provision

---

[1]      Although Prestige did not attach Patient SA's ERISA Plan to its Complaint, the Court may consider it here because Empire attached it to its motion to dismiss, Prestige's Complaint explicitly references it, it is integral to Prestige's claims, and Prestige does not dispute its authenticity. *See Prestige Inst. for Plastic Surgery, P.C. v. Keystone Healthplan E.*, No. 20-0496, 2020 WL 7022668, at *4 n.5 (D.N.J. Nov. 30, 2020) (first citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); and then citing *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), and *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016)).

of the Plan quoted above.   (Compl. ¶ 35).   After Prestige underwent the Plan's internal administrative review process, Horizon determined the payment to Prestige was correct.  (*Id.* ¶ 39).

On April 7, 2020, Prestige brought suit against Horizon, Empire, and Macquari.   The Complaint contains three counts, all of which arise under ERISA.   The first count claims that Horizon violated § 502(a)(l)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), by under-reimbursing Prestige for the surgery performed on Patient SA.  (*Id.* ¶¶ 65–72).  The second count alleges the same but against Empire.  (*Id.* ¶¶ 73–78).  And the third count alleges that Macquari, as the Plan fiduciary, violated its fiduciary duty to the Plan under § 404(a)(l)(B) of ERISA, codified at 29 U.S.C. § 1104(a)(1)(B), by allowing Empire to violate the terms of the Plan.  (*Id.* ¶¶ 79–88).

In its Complaint, Prestige claims standing to sue on the bases (i) Patient SA assigned her rights under the Plan to Prestige, and (ii) Patient SA provided Prestige with a Designation of Authorized Representation ("DAR") which says, in pertinent part, that Prestige is authorized "to bring suit . . . against such liable party or employee health plan in my name with derivative standing." (*Id.* ¶¶ 44–45).  Horizon, Empire, and Macquari move to dismiss the Complaint under Rule 12(b)(6).  Each argues that Prestige does not have derivative standing to sue because the Plan contains a valid and unambiguous anti-assignment clause, and because a DAR—a concept taken from 29 C.F.R. § 2560.503-1(b)(4)—allows an authorized representative to pursue claims on a patient's behalf *only* in the internal administrative appeal process, not in federal court.  (D.E. No. 17-6 ("Empire Mov. Br.") at 10–14; D.E. No. 18-1 ("Horizon Mov. Br.") at 14–18; D.E. No. 19-1 ("Macquari Mov. Br.") at 5–9).  In opposition, Prestige does not dispute the validity of the anti-assignment clause.  Nor does it dispute that the anti-assignment clause covers this lawsuit.  Instead, it argues that § 2560.503-1(b)(4) does not limit a DAR to internal appeals, and that this Court

3

should recognize a DAR as providing a basis for standing in federal court because doing so is good public policy.  (D.E. No. 28 ("Pl.'s Opp. Br.") at 9–13).

## II.     LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6),[2] the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id*. at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.    DISCUSSION

Under § 502(a) of ERISA, "a participant or beneficiary" may bring a civil action to, *inter alia*, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms

---

[2]      While motions to dismiss for lack of standing are generally assessed under Rule 12(b)(1), motions to dismiss for lack of derivative standing under ERISA are assessed under the Rule 12(b)(6) framework.  *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015).  However, Prestige argues that that the motions to dismiss in this case are procedurally deficient because Rule 12(b)(1), not Rule 12(b)(6), is the proper avenue to contest a DAR.  (Pl.'s Opp. Br. at 7–9).  That is because, according to Prestige, a DAR is an avenue for Prestige to bring a direct claim on behalf of Patient SA.  (*Id.*).  Prestige does not cite any cases in the ERISA context that affirmatively support its contention.  Moreover, the DAR indicates that Prestige can pursue a claim through "derivative standing." (Compl. ¶ 46).  Notwithstanding, the label the Court attaches to the motions here is immaterial.  That is because "when standing is challenged on the basis of the pleadings pursuant to Rule 12(b)(1), courts apply the same standard of review as a Rule 12(b)(6) motion to dismiss."  *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2020 WL 1983693, at *4 (D.N.J. Apr. 27, 2020) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)); *cf. Brownback v. King*, 141 S. Ct. 740, 750 n.8 (2021) ("The label does not change the lack of subject-matter jurisdiction, and the claim fails on the merits because it does not state a claim upon which relief can be granted.").

of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). Ordinarily, "standing to sue under ERISA is 'limited to participants and beneficiaries.'" *Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, No. 18-2912, 2018 WL 6567702, at *2 (D.N.J. Dec. 13, 2018) (quoting *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400–01 (3d Cir. 2004)). However, "[h]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain *derivative standing* by assignment from a plan participant or beneficiary," *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (emphasis added), so long as there is not a valid anti-assignment clause that covers the lawsuit in the ERISA plan, *see Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018).

As noted, Prestige does not dispute the validity of the anti-assignment clause in Patient SA's Plan. Nor does Prestige dispute that the anti-assignment clause covers this lawsuit. Rather, Prestige argues it has standing to sue because Patient SA provided it with a DAR. (Pl.'s Opp. Br. at 9–13). Prestige says that ERISA's implementing regulations, specifically, 29 C.F.R. § 2560.503-1(b)(4), allows it to proceed in this way. (*Id.* at 9–10). Meanwhile, Defendants argue that provision is limited to internal appeals. (Empire Mov. Br. at 10–14; Horizon Mov. Br. at 14–18; Macquari Mov. Br. at 5–9). The Court agrees with Defendants.

In pertinent part, § 2560.503-1(b)(4) provides that "[t]he claims procedures for a plan will be deemed to be reasonable only if" those procedures "do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a *benefit claim or appeal* of an adverse benefit determination." Importantly, benefit claims and appeals are not civil actions under § 502 of ERISA. The regulation refers to civil actions in other paragraphs of the section, indicating that when subparagraph (b)(4) refers to "benefit claim or appeal," it means something different

5

than a civil action. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 892 (3d Cir. 2020) ("In fact, this silence may have been purposeful; elsewhere the Act contemplates private-party vindication of rights."). The Court therefore joins the other courts in this District to reach the same result. *See, e.g.*, *Cooperman v. Horizon Blue Cross Blue Shield of New Jersey*, No. 19-19225, 2020 WL 5422801, at *3 (D.N.J. Sept. 10, 2020); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *5 (D.N.J. Oct. 31, 2018); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *8 (D.N.J. July 15, 2015); *Menkowitz v. Blue Cross Blue Shield of Illinois*, No. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014).

In support of its contrary interpretation, Prestige points to an entirely different regulation— 29 C.F.R. § 2590.715-2719. (Pl.'s Opp. Br. at 9–10). Specifically, subparagraph (b)(ii)(F) of that section says that, in the event an issuer fails to adhere to certain requirements "with respect to a claim," "[t]he claimant is . . . entitled to pursue any available remedies under section 502(a) of ERISA." And subparagraph (a)(2)(iii) further defines "Claimant" as "an individual who makes a claim under this section. For purposes of this section, references to claimant include a claimant's authorized representative."

However, Prestige has not indicated how § 2590.715-2719 interacts with § 2560.503-1(b)(4). To the extent Prestige suggests that § 2590.715-2719 itself provides for its standing to sue, subparagraph (a)(1) of that section indicates that the section is limited only to certain plans. Prestige fails to indicate—either in its Complaint or its opposition brief—how that section applies here. Finally, Prestige's interpretation of § 2590.715-2719 is not persuasive. When subparagraph (a)(2)(iii) of that section uses of the phrase "claim under this section," it is not referring to a "claim under § 502(a) of ERISA." Rather, as Horizon points out in its reply brief, "claim under this

section" refers to exhaustion procedures, internal claims, and administrative appeals.  (D.E. No. 31 at 8).

Without any other support for its interpretation of the regulations discussed above, the Court cannot find Prestige has standing to sue under the theories it has offered the Court.  And the Court declines to entertain Prestige's argument that it has standing to sue because that conclusion would make good public policy.  While federal courts have common lawmaking authority in the context of ERISA, that authority is limited to filling the gaps of ERISA based on the clear policy preferences of Congress.  *See Am. Orthopedic & Sports Med.*, 890 F.3d at 451.  Without appropriate support for Prestige's policy arguments, the Court cannot consider taking the drastic step of making law here.  *See id.* at 452 ("Yet the parties' respective policy arguments are only as persuasive as the empirical data that support them, and neither party cites to authoritative empirical data.").

## IV.     CONCLUSION

Based on the foregoing, the Court GRANTS the motions to dismiss.  (D.E. No. 17–19). An appropriate Order will be entered.[3]

                                                                                    /s/Esther Salas
Dated: September 16, 2021                                            Esther Salas, U.S.D.J.

---

[3]     The Court declines to address the other arguments for dismissal.